STATE ex rel. Delores K. THURMAN and Mary Helen Antwiler, as Personal Representative of the Estate of Howard M. Bradley, Relators,

v.

Honorable James A. FRANKLIN Jr., Judge, Camden County Circuit Court, Twenty–Sixth Judicial Circuit, Respondent.

No. 17153.

Missouri Court of Appeals,
Southern District,
Division Two.

June 7, 1991.

Fred R. Bunch, Clinton and C. Michael Fitzgerald, Warrensburg, for relators.

Richard Paul Wacker and M. Douglas Harpool, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for respondent.

SHRUM, Judge.

This is an original proceeding in prohibition. We must decide if our preliminary order to respondent Circuit Judge James A. Franklin Jr. should be made absolute. Our preliminary order prohibited the respondent from enforcing his order that the Henry County sheriff testify at deposition concerning his knowledge of arrests of Howard M. Bradley. The sheriff claimed he could not answer the questions because Bradley's arrest records are closed to the public. We have concluded that the sheriff may testify about Bradley's arrests to the extent that his knowledge is in no way derived from or refreshed by Bradley's closed arrest records. Accordingly, we modify the preliminary order and, as modified, the writ is made absolute.

## FACTUAL AND PROCEDURAL SYNOPSIS

American Family Mutual Insurance Company had issued an automobile liability insurance policy to Bradley. Three days after American Family had issued the policy, Bradley wrecked the insured motor vehicle. Bradley and a passenger, Lisa Kay Thurman, died from injuries sustained in the accident. One of the relators in this action, Mary Helen Antwiler, is the personal representative of Bradley's estate. The other relator, Delores Thurman, the natural mother of Lisa Kay Thurman, filed suit against Bradley's estate claiming damages for the wrongful death of Lisa Kay. American Family then initiated a declaratory judgment suit seeking to avoid coverage on the policy claiming Bradley made a material misrepresentation on his insurance policy application in that he denied having been arrested for anything except motor vehicle violations. Relators, in their separate answers, denied the misrepresentation allegation.

In the course of discovery, American Family directed a subpoena to the Henry County sheriff for "[a]ll files, logs, notes, correspondence, reports or other documents in your possession or under your control pertaining to ... Howard Mark Bradley...." On relators' motion to quash the subpoena, the trial court ruled: "[A]s to the production of any closed records relating to criminal charges, sustained; and, as to personal appearances to give testimony by deposition, overruled."

At the deposition, American Family's attorney asked the sheriff various questions including whether the sheriff had arrested Bradley, whether he had been threatened by Bradley, and whether Bradley had charges pending against him when he died. The attorney attempted to use *Clinton Daily Democrat* newspaper accounts of Bradley's arrests in his efforts to depose the sheriff. After the sheriff, on the advice of the Henry County prosecutor and pursuant to §§ 610.100–610.120 RSMo, refused to answer, American Family sought an order compelling the sheriff to answer the deposition questions. Respondent sustained the motion to compel, and this prohibition proceeding followed.

The petition for a writ of prohibition alleged that "any criminal records of decedent Howard M. Bradley are closed records pursuant to Chapter 610." Based on the relators' petition, we issued our preliminary writ whereby we ordered the respondent to take no action to enforce his order compelling the sheriff to answer. Respondent, here represented by the attorneys for American Family, answered the relators' petition with a denial that Bradley's records are closed and an averment that "the provisions of Chapter 610 RSMo pertaining to closed arrest records apply to public *records* and official *documents* and

do not extend to the personal recollections and observations of private citizens and public officials" (emphasis in original).

In considering whether to make our preliminary order absolute, we faced the initial issue of whether Bradley's arrest records were closed pursuant to Chapter 610. In order to resolve that threshold issue, we followed the procedure used by our supreme court in *State ex rel. Curtis v. Crow,* 580 S.W.2d 753 (Mo. banc 1979). Pursuant to Rule 68.03, we appointed the Honorable Mary A. Dickerson as a master to conduct a hearing and make findings of fact concerning every arrest of Bradley in Henry County and the subsequent history of those arrests.

We have received the master's report which contains her findings of fact. Disregarding motor vehicle violations, the report reveals Bradley was arrested in Henry County on January 10 or 11, 1974. Criminal charges were filed in connection with the January 1974 arrest, but the charges were dismissed by the state. The report reveals additional non-traffic related arrests of Bradley on May 28, 1986, and December 3, 1986. Criminal charges were filed in connection with each of those arrests but all the charges were dismissed. The report of the master also reveals that, with one exception noted below, the clerks of the Henry County courts, the sheriff's office, and the highway patrol treat their records regarding these arrests as closed.

A summary attached to the master's report states that the Henry County Associate Circuit Court shows one of the January 1974 charges to be an "open case"; nevertheless, the report recites that Bradley was bound over to the circuit court on that charge, the charge subsequently was dismissed, and the Henry County Circuit Court treats the case as "closed." None of the parties has filed exceptions to the master's report.

 We now renew our consideration of our preliminary order. Initially, we note that prohibition is the proper procedure to review a trial court's order when it is alleged that such order improperly requires discovery. *State ex rel. Knight v. Barnes,* 723 S.W.2d 591, 593 (Mo.App.1987); *State ex rel. Robinson v. Crouch,* 616 S.W.2d 587, 592 (Mo.App.1981). Prohibition is a proper means of contesting the enforcement of discovery of allegedly privileged information. *State ex rel. Cain v. Barker,* 540 S.W.2d 50, 51 (Mo. banc 1976); *State ex rel. Gonzenbach v. Eberwein,* 655 S.W.2d 794, 795 (Mo.App.1983).

## ANALYSIS AND DECISION

Missouri's Arrest Records law is found at §§ 610.100–610.120, RSMo 1986 & Cum. Supp.1990.[1] In its original form, the Arrest Records act provided for closing of arrest records "to all persons except the person arrested" and required, under circumstances not relevant to this case, that

---

1. Pertinent provisions of Missouri's Arrest Records law are as follows:

 610.100. If any person is arrested and not charged with an offense against the law within thirty days of his arrest, official records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records, except as provided in section 610.120.

 610.105. If the person arrested is charged but the case is subsequently nolle prossed, dismissed, or the accused is found not guilty or imposition of sentence is suspended in the court in which the action is prosecuted, official records pertaining to the case shall thereafter be closed records when such case is finally terminated except as provided in section 610.120.

 610.110. No person as to whom such records have become closed records shall thereafter, under any provision of law, be held to be guilty of perjury or otherwise of giving a false statement by reason of his failure to recite or ac-

knowledge such arrest or trial in response to any inquiry made of him for any purpose, except as provided in section 491.050, RSMo, and section 610.120.

 610.120.1. Records required to be closed shall not be destroyed; they shall be inaccessible to the general public and to all persons other than the defendant except as provided in this section and section 43.507, RSMo. They shall be available only to courts, law enforcement agencies, and federal agencies for purposes of prosecution, sentencing, parole consideration, criminal justice employment, child care employment, nursing home employment and to federal agencies for such investigative purposes as authorized by law or presidential executive order. These records shall be made available for the above purposes regardless of any previous statutory provision which had closed such records to certain agencies or for certain purposes....

arrest records be "expunged."[2] In 1981, the Arrest Records statute underwent a major revision, as explained in *Martin v. Schmalz*, 713 S.W.2d 22 (Mo.App.1986).

> Expungement provisions were totally eliminated. Arrest records which would have been subject to destruction or obliteration under the predecessor law are now "closed records," maintained but inaccessible to the general public and confidential except to the defendant, and to courts, administrative agencies, and law enforcement agencies for the limited purposes of prosecution, litigation, sentencing and parole considerations. Sec. 610.-120, RSMo.Cum.Supp.1984. Thus, attention is now focused not upon the existence of the record of an arrest not resulting in conviction, but rather upon the accessibility and the use of such a record. The legislative intent, to prevent the abusive use of groundless arrests and meritless charges, is accomplished by restricting public access to arrest records. . . .

713 S.W.2d at 25. The *Schmalz* court was construing § 610.120 as amended in 1983; that version of § 610.120 is set out in full in the *Schmalz* opinion. 713 S.W.2d at 23. In 1989, § 610.120 was amended again and was renumbered § 610.120.1. The 1989 version of § 610.120.1 is current and is set out in footnote 1. For exceptions applicable to the case before us, we look to the current version of § 610.120 because the Arrest Records law must be given retrospective as well as prospective operation. *Schmalz*, 713 S.W.2d at 25. We note that the 1989 amendment to § 610.120 removed "litigation" from the list of specific uses permitted for closed records.

■ Based upon the facts reported by the master, we hold that the Arrest Records statute requires closure of the official records of Bradley's arrests. Bradley was arrested and charged in January 1974 but the case was dismissed in 1977. Pursuant to the law in effect in 1977, official records pertaining to the 1974 case became closed to all persons except Bradley. Section 610.105, Mo.Laws 1973. Charges filed against Bradley in connection with the 1986 arrests were dismissed, one charge in 1986 and one in 1987. Thus, pursuant to § 610.105, official records pertaining to Bradley's 1986 arrests are closed except as provided in § 610.120. Section 610.120, RSMo 1986 & Cum.Supp.1990, contains no exceptions applicable to Bradley's arrest records.

■ Having concluded that Bradley's arrest records are closed within the meaning of the Arrest Records act, we now must determine whether the statute's prohibition on disclosure extends beyond the physical records themselves to encompass information contained within the records. In construing statutes, our primary responsibility is to ascertain the intent of the legislature. *Community Fed. Sav. & Loan Ass'n v. Director of Rev.*, 752 S.W.2d 794, 798 (Mo. banc 1988).

In *State ex rel. Curtis v. Crow*, our supreme court analyzed the legislature's intent in enacting § 195.290, RSMo Supp. 1975 (now repealed)[3], a provision that per-

**2.** Section 610.100, Mo. Laws 1973, provided: "If any person is arrested and not charged with an offense against the law within thirty days of his arrest, all records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records to all persons except the person arrested. If there is no conviction within one year after the records are closed, all records of the arrest and of any detention or confinement incident thereto shall be expunged in any city or county having a population of five hundred thousand or more."

Section 610.105, Mo.Laws 1973, provided: "If the person arrested is charged but the case is subsequently nolle prossed, dismissed, or the accused is found not guilty in the court in which the action is prosecuted, official records pertaining to the case shall thereafter be closed records to all persons except the person arrested or charged."

**3.** Section 195.290 RSMo 1975 Supp. provided:

After a period of not less than six months from the time that an offender was placed on probation by a court, such person, who at the time of the offense was twenty-one years of age or younger, may apply to the court which sentenced him for an order to expunge from all official records, except from those records maintained under the comprehensive drug abuse prevention and control act, as enacted in 1970, and all recordations of his arrest, trial and conviction. If the court determines, after a hearing and after reference to the controlled dangerous substances registry, that such person during the period of such probation and during

mitted expungement of the records of drug convictions under certain circumstances. The court held that a newspaper that was the defendant in a libel suit could not discover records maintained by the prosecuting attorney's office concerning the relator's conviction on a charge of attempted possession of a controlled substance. In observing that the legislature, in enacting § 195.290, intended "broad rather than limited application of an order to expunge" official records of a conviction, the court stated,

Our conclusion [that the legislature intended broad rather than limited application of § 195.290] is supported by the statute's additional provision that if *"in response to any inquiry made of him for any purpose"* (emphasis in *Curtis*), the offender does not acknowledge that such arrest, prosecution and conviction occurred, the offender will not be guilty of perjury or making a false statement. This makes it crystal clear that the legislature intended that the prior arrest, prosecution and conviction not be used against the offender.

580 S.W.2d at 757. The specific language of § 195.290 emphasized by the court in *Curtis* is found in § 610.110:

No person as to whom such records have become closed records shall thereafter, under any provision of law, be held to be guilty of perjury or otherwise of giving a false statement by reason of his failure to recite or acknowledge such arrest or trial *in response to any inquiry made of him for any purpose,* except as provided in section 491.050, RSMo, and section 610.120.

Indeed, § 610.110 is virtually identical to the concluding sentence of § 195.290. Moreover, the current version of § 610.110 is identical to its original 1973 version, with the exception of two amendments enacted in 1981: the addition of the final clause

listing exceptions and the deletion of the phrase "or as to whom such records have been expunged" following "have become closed records." The legislature is deemed to have been aware of the *Curtis* court's analysis of legislative intent of a similar statute when it made revisions in the Arrest Records law in 1981. *Kilbane v. Director of Rev.*, 544 S.W.2d 9, 11 (Mo. banc 1976). By retaining the language of § 610.110 that appeared in § 195.290, the legislature confirmed its intention that the Arrest Records law be given broad application. We believe the supreme court likewise would conclude the legislature intended §§ 610.100–610.120 be given broad application.

■ The Eastern District Court of Appeals has taken the view that §§ 610.100–610.120 should be broadly applied. In *Schmalz*, the court noted that the legislature enacted §§ 610.100–610.120 for the purpose of "preventing the injustice which may result from publication of information regarding groundless arrests and unfounded charges by restricting access to such records and by limiting use of the information contained therein." 713 S.W.2d at 25. In *Schmalz*, the court held that §§ 610.-100–610.120 prevented an agency of the St. Louis County Board of Police Commissioners from considering the closed arrest records of a person who had given false information about his arrests on his application for a private watchman's license. The court pointed out that although disclosure, of itself, of the applicant's closed arrest records to the agency did not violate the Arrest Records act, the "acquisition and use of the information" for a purpose other than those enumerated in § 610.120 (now § 610.120.1) contravened the statute. Id. at 25–26. The court then stated:

The *evidence* of appellant's pre–1973 arrests was before the agency in contra-

the period of time prior to his application to the court under this section has not been guilty of any offenses, or repeated violation of the conditions of such probation, he shall enter such order. The effect of such order shall be to restore such person, in the contemplation of the law, to the status he occupied prior to such arrest and conviction. No person as to whom

such order has been entered shall be held thereafter under any provision of any law to be guilty of perjury or otherwise giving a false statement by reason of his failure to recite or acknowledge such arrest or trial or conviction in response to any inquiry made of him for any purpose.

vention of the statute and was therefore *not competent.* To hold otherwise would amount to a judicial stamp of approval upon a violation of the arrest record statutes. To permit evidence of groundless arrests to be used as a factor in denying an application for a license necessary to employment would thwart the very *purpose* of the legislation.

We attribute no significance to the fact that appellant's application was denied because he falsified his answers to questions concerning arrests rather than because of the arrests themselves. *It is the use of the arrest information for a purpose unauthorized by law which renders the evidence incompetent.* Whether it served as the direct basis of the denial or indirectly as proof of false answers warranting denial, consideration of the closed arrest records in connection with a watchman's license application violates the letter of the law and the policy underlying its enactment.

*Schmalz,* 713 S.W.2d at 26 (emphasis added). We are not persuaded by the respondent's argument that the rationale offered for Chapter 610 in *Schmalz* "fails when the person designed to be protected by the arrest records statutes is deceased." We do not believe the legislature intended that a person's arrest records, once closed, should become automatically accessible to the general public upon that person's death.

Based on the analysis of legislative intent in *Curtis* and *Schmalz,* we hold that §§ 610.100–610.120 prevents American Family from deposing the Henry County sheriff about information drawn from Bradley's closed arrest records. To permit the sheriff to testify from his memory of those records prior to their closure or to use the records to refresh his recollection would be to sanction the use of Bradley's closed arrest records for civil litigation, a purpose that is not authorized by § 610.120.1. To allow American Family to question the sheriff about information drawn from Bradley's closed records would thwart the very purpose of the Arrest Records law. Any evidence obtained from Bradley's closed records in contravention

of the Arrest Records law would not be competent. *Schmalz,* 713 S.W.2d at 26.

■ Respondent raises other arguments which we deal with summarily. First, respondent argues Bradley waived the protection of the Arrest Records law by completing the insurance policy application. Although the *Schmalz* court did not directly address the issue of waiver, we believe Bradley's insurance application is analogous to the appellant Martin's watchman license application. To adopt the respondent's position that an application—for an insurance policy or a watchman's license— creates a waiver, would, in effect, require an applicant to reopen his own closed files, thereby violating the "letter of the law and the policy underlying its enactment." *See* 713 S.W.2d at 26.

■ Second, respondent argues Bradley's estate and relator Thurman "waived any purported privilege of Chapter 610 V.A.M.S. in their answers to the petition for declaratory judgment by denying Howard M. Bradley made a material misrepresentation, and by failure to raise the Chapter 610 'privilege' as an affirmative defense." We are not persuaded by this argument. In *Curtis,* the supreme court held that a person who filed a libel suit thereby putting in issue his character and reputation did not waive his rights under § 195.290. 580 S.W.2d at 757–58. The reasoning in *Curtis* is applicable to the case before us. Moreover, the protection afforded by Chapter 610 deals with the competency of evidence, *Schmalz,* 713 S.W.2d at 26; it is not an affirmative defense that must be pleaded in order to comply with Rule 55.08.

■ We do not hold that the Henry County sheriff could not be deposed about his personal knowledge of Bradley's arrests, independent of the closed records. The Arrest Records law does not create a privilege in the sheriff not to testify. *See Curtis,* 580 S.W.2d at 758. We do not believe that the legislature intended that the terms "official records of the arrest" and "official records pertaining to the case" in §§ 610.100 and 610.105 should be

construed so broadly as to encompass the personal and independent observations of the Henry County sheriff. Thus, for example, had the sheriff been on the scene of an arrest of Bradley, his testimony, based on his personal knowledge and independent recollection of the actual event, without review of or resort to "closed records" to refresh his recollection or recall the event, would not be incompetent. *See Hampton v. Manson,* 5 Conn.App. 343, 497 A.2d 1044, 1046 (1985). Although the records of Bradley's arrests are closed by statute, the statute does not close the memories of persons who have personal knowledge of his arrests. *See State v. Morowitz,* 200 Conn. 440, 512 A.2d 175, 182 (1986).

We recognize that as a part of the master's proceedings, the Henry County sheriff testified directly from his closed records. Thus we suggest that an initial deposition inquiry focus on the sheriff's recollections which pre-date his review of Bradley's closed records. The inquiry will need to be further narrowed to whether the sheriff has personal knowledge of Bradley's arrests wholly independent of the records which are now closed.

Accordingly, we modify our preliminary order to prohibit the respondent from enforcing his order that the Henry County sheriff testify at deposition insofar as the sheriff's testimony is drawn from his recollection of Bradley's closed arrest records or his memory is refreshed by those records. As amended, our preliminary writ is made absolute.

The costs of the master's proceedings, including the hearing transcript, are assessed as follows: one-half to relators and one-half to American Family Mutual Insurance Company. *See* § 530.070, RSMo 1986; *State ex rel. Isbell v. Kelso,* 442 S.W.2d 163, 165 (Mo.App.1969); *State ex rel. Woods v. Kirkwood,* 426 S.W.2d 690, 692 (Mo.App.1968).

Preliminary writ, as herein amended, made absolute.

FLANIGAN, C.J., concurs in part; dissents in part.

HOGAN, J., concurs.

FLANIGAN, Chief Judge, concurring in part and dissenting in part.

I agree with that portion of the principal opinion which holds that Bradley's arrest records are, by reason of §§ 610.100–610.-120 RSMo 1986, and Cum.Supp.1990, closed records. I also agree that Bradley, Bradley's Estate, and relator Thurman did not waive the protection of those statutes.

I disagree with that portion of the principal opinion which permits the sheriff to be interrogated on deposition about his personal knowledge of Bradley's arrests, which are the same arrests with which the closed records deal.

Section 610.110, with two exceptions not applicable here, provides:

"No person as to whom such records have become closed records shall thereafter, under any provision of law, be held to be guilty of perjury or *otherwise of giving a false statement* by reason of his failure to recite or acknowledge such arrest or trial *in response to any inquiry made of him for any purpose...."* (Emphasis added.)

Rule 56.01(b)(1) provides:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

In my view, the arrests with which the closed records deal are not relevant to the subject matter involved in the pending action. Any false statements made by Bradley with respect to those arrests fall within the emphasized language of § 610.110.

The legislature has seen fit to grant that protection. Evidence of the sheriff's memory of those arrests would not be admissible at the trial. It is my view that the information sought, his memory of arrests concerning which the records are closed, is not reasonably calculated to lead to the discovery of admissible evidence.