THOMAS F. BROWN *v.* WILLIAM VILLANO ET AL., COCONSERVATORS (ESTATE OF RUTH VILLANO) (AC 16199)

O'Connell, C. J., and Spear and Stoughton, Js.

Argued January 28—officially released July 14, 1998

*Thomas F. Brown*, the appellant-appellee (plaintiff).

*Charles D. Ray*, with whom, on the brief, were *William H. Narwold* and *John P. McKinney*, for the appellees-appellants (defendants).

*Opinion*

SPEAR, J. The plaintiff, Thomas F. Brown, an attorney who was appointed by the Probate Court to represent Ruth Villano, appeals from the judgment of the trial court that approved an accounting of one of the defendants, William Villano, for the period of time that William acted pursuant to a power of attorney from Ruth. The plaintiff claims, inter alia, that the trial court improperly applied the fair preponderance of the evidence standard of proof to the matters at issue rather than the clear and convincing standard that is applicable to fiduciary dealings. The defendants cross appeal, claiming that the trial court improperly denied their motion to dismiss, which challenged the plaintiff's right to appeal the action of the Probate Court, where the

plaintiff was neither Ruth's guardian ad litem nor her next friend and where the trial court made no finding that the appeal was in Ruth's best interests. We agree with the plaintiff and reverse the judgment of the trial court.[1]

The record discloses the factual and procedural history. The plaintiff had been associated in the practice of law with Vincent Villano, who died in 1991, leaving Ruth Villano as his surviving spouse. Prior to Vincent's death, William Villano, the son of Vincent and Ruth, began assisting them by writing their checks and helping them to manage family affairs. Ruth had a stroke later in 1991 and, at the time of trial, was in a convalescent home.

Prior to Vincent's death, the plaintiff told William that, because of his mother's problems, a conservator could be appointed for her or she could execute a power of attorney. William and the family chose the power of attorney, which was executed on August 6, 1990, naming William as attorney in fact.

The plaintiff applied to be appointed conservator for Ruth in April, 1993.[2] After a hearing, the Probate Court appointed William Villano and Sandra Villano coconservators of the person and estate of Ruth, and appointed the plaintiff as the attorney for Ruth. The Probate Court granted the plaintiff's request that William be ordered to account for all money that he had expended from

---

[1] The plaintiff makes five other claims. Two of the claims are evidentiary and may arise in the new trial. We address only one of them here because the other evidentiary claim is inadequately briefed and, therefore, we decline to review it. The claims that the court was not fair and impartial and that two of its factual conclusions are erroneous need not be discussed because the partiality claim cannot arise in the new trial and we do not know what factual conclusions the new trial judge will reach. See General Statutes § 51-183c, which provides in relevant part: "No judge of any court who tried a case without a jury in which a new trial is granted . . . may again try the case. . . ."

[2] The plaintiff was named as executor in Ruth's will.

the date of Vincent Villano's death to the date of his appointment as coconservator. William filed an accounting that the Probate Court approved. The plaintiff appealed from the decree of the Probate Court, and the Superior Court, after a trial de novo, approved the accounting. This appeal and cross appeal followed.

I

The plaintiff challenges the trial court's legal conclusion that the fair preponderance of the evidence standard of proof applies where a power of attorney accounting is at issue. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct . . . ." (Internal quotation marks omitted.) *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 14, 664 A.2d 719 (1995). We agree with the plaintiff that the trial court improperly applied the fair preponderance of the evidence standard of proof.

The power of attorney created a principal-agent relationship between William and Ruth, and agency is a fiduciary relationship. *Long* v. *Schull*, 184 Conn. 252, 256, 439 A.2d 975 (1981). "[A] fiduciary relationship has always demanded a high degree of scrutiny. For example, we have held . . . that [p]roof of a fiduciary relationship . . . imposes a twofold burden upon the fiduciary. Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof . . . by clear and convincing evidence . . . ." (Internal quotation marks omitted.) *Andrews* v. *Gorby*, 237 Conn. 12, 21, 675 A.2d 449 (1996); *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 228–30, 635 A.2d 798 (1994).

The trial court cited *Andrews* v. *Gorby,* supra, 237 Conn. 12, in support of its utilization of the fair preponderance of the evidence standard of proof. In so doing, the trial court relied on a statement in *Andrews* that "the burden rests on the attorney to prove the reasonableness of the compensation requested by a preponderance of the evidence." Id., 23. In this case, there was no request for attorney's fees as there was in *Andrews,* where the Supreme Court concluded that reference to an attorney's fee schedule in a will is irrelevant as a matter of public policy. Id., 22. Such fee requests are matters for the court's consideration. See *Miller* v. *Kirshner,* 225 Conn. 185, 201, 621 A.2d 1326 (1993). In *Andrews,* the court reversed the trial court's affirmance of the Probate Court's refusal to award attorney's fees and remanded the case for a new trial on the issue of reasonable fees. Id., 25. On remand, the trial court was asked to review, inter alia, a request for attorney's fees where there was no issue of unfair dealing, overbearing or improper conduct by the attorney who had drafted both the will and the fee schedule. In the absence of any claim of breach of fiduciary duty, an attorney who is seeking fees in the Probate Court would normally request compensation and have the ordinary burden of proving the reasonableness of such compensation by a fair preponderance of the evidence.

The defendants contend that the application of the wrong standard here was harmless because of the undisputed and persuasive evidence. The short answer to this claim is that it is the trial court, the fact finder, that must initially determine whether evidence satisfies any particular standard of proof. We cannot make that determination, regardless of how persuasive the evidence may appear to us on review. *Santosky* v. *Kramer,* 455 U.S. 745, 757, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Schaffer* v. *Lindy,* 8 Conn. App. 96, 105, 511

A.2d 1022 (1986); *Kavarco* v. *T.J.E., Inc.*, 2 Conn. App. 294, 297, 478 A.2d 257 (1984).

As an alternative, the defendants suggest that we remand the case to the trial court for articulation as to whether the evidence satisfied the clear and convincing standard. We decline to do so. It is true that in *State* v. *Treat*, 38 Conn. App. 762, 768–70, 664 A.2d 785, cert. denied, 235 Conn. 920, 665 A.2d 907 (1995), where the trial court *did not* state the standard of proof that it used in a probation violation hearing, we remanded the case for articulation of the standard. In other violation of probation cases, however, where we were satisfied that the trial court had, in fact, applied a previously overruled standard of proof, we reversed and ordered new probation hearings.[3] See *State* v. *Paul*, 35 Conn. App. 201, 203–204, 644 A.2d 969 (1994); *State* v. *Torres*, 35 Conn. App. 107, 110–11, 644 A.2d 384 (1994); *State* v. *Willis*, 34 Conn. App. 931, 932, 643 A.2d 318 (1994); *In re Marius M.*, 34 Conn. App. 535, 536, 642 A.2d 733 (1994). Because the trial court here clearly stated that it applied the fair preponderance of the evidence standard, we conclude that a new hearing is required.

## II

We now turn to the two evidentiary claims that are raised by the plaintiff, as they will most likely recur in the new trial. The plaintiff claims that the trial court improperly admitted (1) hearsay testimony as to Ruth's directions to William and (2) testimony from William that he, without Ruth's approval, made certain expenditures that were consistent with Ruth's past treatment of her children and grandchildren.[4]

---

[3] In *State* v. *Davis*, 229 Conn. 285, 302–303, 641 A.2d 370 (1994), our Supreme Court held that the state must establish a violation of probation by a fair preponderance of the evidence, rather than the previously used lesser standard of "reasonable satisfaction." A number of cases subsequently arose challenging the use of the lesser standard.

[4] The plaintiff also claims that the trial court improperly found that the plaintiff had acted as attorney for William in drawing the original power of

### A

The plaintiff claims that General Statutes § 52-175 precludes William from testifying as to the directions that Ruth gave him regarding expenditures. Section 52-175 (a) provides that "[i]n the trial of any civil action in which any *party* is, at the time of the trial, mentally ill or unable to testify by reason of incurable sickness, failing mind, old age, infirmity or senility, the entries and memoranda of the party, made while he was sane and which are relevant to the matter in issue, may be received as evidence." (Emphasis added.) The plaintiff claims that the admission of oral statements is not authorized by § 52-175.

In this appeal from the Probate Court, Brown is the plaintiff and William Villano and Sandra Villano, coconservators, are the defendants. Because Ruth is not a party, § 52-175 does not apply. Even if the word "party" could be construed to include Ruth; see *Cross* v. *Hudon*, 42 Conn. App. 59, 64–65, 677 A.2d 1385, cert. denied, 239 Conn. 932, 683 A.2d 400 (1996); the evidentiary requirements of subsection (c)[5] of § 52-175 were not met. Although the plaintiff asserts in his brief that "[c]learly [Ruth] Villano was incapacitated and unable to testify," he offered no evidence in support of the § 52-175 claim, and the trial court made no such finding.

We conclude that the trial court's ruling was not improper under the circumstances here, where the only claim was that the court's ruling violated § 52-175.

### B

The plaintiff claims that William should not have been permitted to testify that "he made payments to himself

attorney. We fail to see the relevance of this claim, even if it is correct. At oral argument, the plaintiff was unable to state any reason why we should review this claim. We therefore decline to do so.

[5] General Statutes § 52-175 (c) provides: "The court shall determine, upon competent evidence, as a preliminary question of fact, whether the provi-

and other members of the family . . . based on [Ruth's] past treatment of her children and grandchildren." The plaintiff cites no authority in support of this proposition and simply states in his brief that "[t]he plaintiff has not been referred to any law that permits a fiduciary to make payments on behalf of his principal based on the prior gift giving habits or practices of the principal."

We decline to review this issue because it is inadequately briefed. See *State* v. *Rodriguez*, 44 Conn. App. 818, 823–24, 692 A.2d 846, cert. denied, 242 Conn. 902, 697 A.2d 363 (1997).

### III

In their cross appeal,[6] the defendants claim that this case should be dismissed for lack of standing because the plaintiff is not Ruth's guardian ad litem or next friend. In the alternative, the defendants claim that the case should be remanded to the Probate Court for a hearing to determine whether the appeal from probate is in Ruth's best interests.

After the motion to dismiss was denied,[7] our Supreme Court decided *Newman* v. *Newman*, 235 Conn. 82, 663 A.2d 980 (1995). In *Newman*, the Supreme Court held that in a marriage dissolution case "the lack of a guardian or next friend does not deprive the children of standing to appeal." Id., 102. The Supreme Court noted

---

sions of this section apply to any party or parties to any action on trial before it."

[6] The defendants have filed what they denominated a cross appeal. Because they prevailed in the trial court, they are not aggrieved and have no standing to file a cross appeal. We will, therefore, consider their claim that this case should have been dismissed by the trial court as an alternative ground for affirmance under Practice Book § 4013, now Practice Book (1998 Rev.) § 63-4. See *Sekor* v. *Board of Education*, 240 Conn. 119, 121 n.2, 689 A.2d 1112 (1997).

[7] A motion to reconsider that denial was granted, but the court again denied the motion to dismiss.

that such a defect was an amendable irregularity and did not implicate subject matter jurisdiction. Id. On the basis of *Newman*, we conclude that the trial court was not required to dismiss the case for lack of subject matter jurisdiction. As regards standing, our Supreme Court has recognized that "the legal disability of an incompetent is analogous to that of a minor." *Cottrell* v. *Connecticut Bank & Trust Co.*, 175 Conn. 257, 264, 398 A.2d 307 (1978); see also *Buchholz's Appeal from Probate*, 9 Conn. App. 413, 420, 519 A.2d 615 (1987).

*Newman* v. *Newman*, supra, 235 Conn. 82, is also instructive for purposes of our remand. In *Newman*, our Supreme Court determined that the minor children could appeal without a guardian ad litem or next friend if they "first [persuaded] the trial court that such an appeal [would be] in their best interests." Id., 100. In this case, we do not agree with the defendants that the Probate Court, on remand, should first determine whether the appeal from the decree of the Probate Court is in Ruth's best interests. As a practical matter, no record was made of the Probate Court hearing, and there is nothing for the Probate Court to review to determine whether an appeal from its decree would be in Ruth's best interests. To provide sufficient information for the Probate Court to determine that issue, evidence that is similar to that required for the accounting would have to be produced. From a legal perspective, any ruling of the Probate Court would be subject to an appeal, which could be de novo, and the trial court would then hear the same evidence on the appeal. Considerations of judicial economy militate against a remand to the Probate Court in the circumstances of this case. In the interest of judicial economy and pursuant to our supervisory power; see Practice Book (1998 Rev.) § 60-2; we direct the trial court, on remand, to hold a hearing to determine whether the appeal from probate is in the best interests of Ruth Villano. Upon

a determination that the appeal from probate is in her best interests, the trial court shall proceed with the appeal. Upon a determination that the appeal is not in her best interests, the case shall be dismissed.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.